(C. D. 1255)

E. DILLINGHAM, INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided June 26, 1950)

*Eric C. Gordon* for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Jerome Vale,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: Four horses and a truckload of agricultural implements entered the United States from Canada on July 12, 1946, accompanied by the owner thereof. The agricultural implements were granted free entry under the *eo nomine* provision therefor in paragraph 1604 of the Tariff Act of 1930, as modified by the Canadian Trade Agreements (T. D. 48033 and T. D. 49752). The horses were assessed for duty under paragraph 714 of the same law, as modified by said Canadian Trade Agreement (T. D. 49752), at the rate of $15 per head. Plaintiff claims that the horses are entitled to entry free of duty under paragraph 1607 of the same law, which permits free entry for—

* * * teams of animals, including their harness and tackle, and the wagons or other vehicles actually owned by persons emigrating from foreign countries to the United States with their families, .and in actual use for the purpose of such emigration, under such regulations as the Secretary of the Treasury may prescribe; * * *.

It is apparent from the evidence that the horses were actually owned by one Irwin W. Orr, for whose account entry was made by a firm of customs brokers. At the time of entry Mr. Orr was a farmer who had lived all his life up to that time in Canada, where he owned and operated a farm and had used said horses in connection with his farming operations. Prior to the time of entry, to wit, in May 1946, Mr. Orr entered the United States, apparently on a temporary visitor's permit, and while in this country purchased a farm with the intention of living thereon. He made two trips back to Canada, and upon his return from the second trip, about July 10, 1946, he was accompanied to the border by his wife and six children, together with their furniture and personal belongings, these four horses, and wagons and harness, in two trucks. He attempted to obtain free entry of the household effects on the ground that he was a person emigrating to the United States with his family. Free entry was refused by the customs officials, whereupon the family remained in Canada while Mr. Orr proceeded to his farm in this country, taking with him the agricultural implements and the horses. Upon arrival at the farm, he cut the hay and lived on the farm until the time that he returned to Canada and brought his family to this country, together with the household belongings. At the time of his return to this country from this trip he was admitted as a nonquota immigrant. His application for a permanent immigration visa had been made on May 3d or 4th but was not granted until August 15, 1946, subsequent to the time

he first made application for free entry with the horses and agricultural implements.

It is contended on behalf of the plaintiff that Mr. Orr is entitled to the exemption granted emigrants under said paragraph 1607, for the reason that the process of emigrating is not confined to an individual act of entry into a country, but may be spread over a considerable period of time and may consist of a series of acts. This contention might have some force were it not for the fact that at the time of entry Mr. Orr was only a temporary visitor to the United States and entered as such. His status later on as an emigrant cannot be related back to the time of his entry with the horses and agricultural implements, at which time he was not yet in possession of an immigration visa. To accept plaintiff's construction would render the safeguards surrounding admission of immigrants nugatory, in that it would be practically impossible to enforce regulations promulgated in conformity therewith, or to fix the time of entry into the country.

On the record here made, the horses were in actual use for the purpose of transporting, not an immigrant or emigrant (which terms we consider interchangeable for the purposes of this case) to this country, but a visitor to this country to a farm which he has acquired and on which he desired to cut the hay during the haying season. The fact that the visitor had applied for a permanent visa cannot alter his status as of the time of entry.

Although the courts have passed upon various phases of this provision of the law as it has appeared in prior tariff acts since 1883, we have been unable to find any case, nor has one been called to our attention, in which this issue was presented. In the early case of *Dan. Lee et al.*, decided under the Tariff Act of 1890 and reported in T. D. 12956, G. A. 1507, the court said:

The manifest purpose of the law is to meet the case of immigrants of limited means from contiguous foreign territory, who would resort to the most convenient and economical mode practicable for transporting themselves, their families, and their household effects from the place of departure to their destination in this country. Such appears to have been the construction placed upon this provision, which is the same as contained in the previous acts, by the Treasury Department in repeated decisions prior to October 1, 1890.

The question there presented was whether horses and harness purchased by the protestants in Canada within 3 weeks before their arrival, manifestly for the reason that they could be obtained there at prices less than their value in the United States, were entitled to free entry under paragraph 483 of the Tariff Act of 1890, the predecessor of the present paragraph 1607. The court held that under the conditions there presented "there was no actual and necessary use made of these horses or their harness, either for the purpose of the protestants' immigration hither or immediately following their ar-

rival, for they were without wagons or other vehicles, and had neither families, household effects, tools of trade, nor personal effects requiring such use for the purpose of conveyance from the port of arrival to their destination in the United States." In other words, a strict construction was placed upon the wording of the act.

It has been held that the statute defining "immigrant" and the statute regulating admission of immigrants do not apply to an alien coming into the United States as a temporary visitor, since he is not an "immigrant." *United States ex rel. Di Mieri* v. *Uhl*, 96 Fed. 2d 92. From the record it is plain that Mr. Orr was temporarily visiting this country to harvest the hay on the farm previously acquired by him. Because he was not an immigrant at the time of this entry, he was permitted to enter this country temporarily in order to attend to the cutting of the hay. It was unfortunate that he had not at that time received his visa, but even his intention to remain permanently in the United States would not have justified his admission at that time as an immigrant so as to admit the horses here involved free of duty. Any hardship arising from this construction, while regrettable, is unavoidable in order to protect the revenue of the United States.

For the reasons above set forth the plaintiff's claim is overruled. Judgment will be rendered for the defendant.